## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), dated and effective as of October ____, 2016, by and between **Charles S. Berrane and/or Assigns** ("Buyer") and **Ace's Indoor Shooting Range & Pro Gun Shop, Inc.** ("Seller").

### RECITALS

WHEREAS, Seller operates an indoor shooting range and gun shop;

WHEREAS, on April 25, 2016 Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court"), bearing Case No. 16-15918-RAM (the "Bankruptcy Case"); and

WHEREAS, Seller is engaged in the business of operating an indoor shooting range and retail sales of firearms and ammunition;

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell, convey, assign and transfer to Buyer substantially all of the assets of Seller, all in the manner and subject to the terms and conditions set forth herein and in accordance with 11 U.S.C. §§ 105, 363 and 365;

WHEREAS, Seller's business is located at 2105 NW 102 Place, Miami, Florida 33172 (the "Premises").

WHEREAS, Seller holds an interest in the Premises by virtue of a lease agreement with the Premises' owner, Geonan Holdings, LLC ("Geonan Property").

WHEREAS, Buyer wishes to purchase the Premises from Geonan Property or to purchase the promissory note (the "Note") Geonan Property executed when it purchased the Property;

WHEREAS, Buyer wishes to satisfy substantially all of the claims asserted against the Seller's bankruptcy estate.

WHEREAS, this Agreement is contingent upon confirmation of a chapter 11 plan of reorganization that is acceptable to Buyer (the "Plan"), and upon the execution of a contract to purchase the Premises and/or the Note (the "Premises Agreement").

NOW, THEREFORE, in consideration of the mutual representations, warranties and covenants herein contained, the parties hereto hereby agree as follows:

 

10/12/16
11:02AM EDT

## EXHIBIT A

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the parties agree as follows:

1.    <u>Purchase and Sale of Assets</u>.  Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller shall, pursuant to 11 U.S.C. §§ 105, 363, and 365, sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase, assume and acquire from Seller, as of the Effective Date (as defined in Section 5 hereof), free and clear of any and all claims, liens, mortgages, security interests, encumbrances or other restrictions of any kind or nature ("<u>Liens</u>") with such Liens to attach to the proceeds, all of Seller's right, title and interest in and to substantially all of the Debtor's assets (the "<u>Purchased Assets</u>") described in **Schedule "A"** on an as-is, where-is subject to, and contingent upon, confirmation of the Plan incorporating the terms of this Agreement;

1.1.    <u>Contracts and Agreements</u>.  Any agreement, contract, lease, payor or provider agreement included in the Purchased Assets are listed on **Schedule "B"** and/or identified as being assumed by Buyer, including any renewals, extensions, amendments or modifications thereof (the "<u>Assumed Contracts</u>"), and the right to receive all payments, rights and privileges of Seller under the Assumed Contracts;

1.2.    <u>Excluded Assets</u>.  Notwithstanding anything to the contrary herein, the following assets of Seller (the "<u>Excluded Assets</u>") shall not be conveyed or assigned to Buyer under this Agreement:  Any assets not specifically enumerated on Schedule "A" or Schedule "B".

1.3.    <u>Assumption of Liabilities</u>. On the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer shall assume and agree to discharge only those liabilities of the Seller (a) as provided in the terms and conditions of the Plan; and (b) the current and unpaid regular monthly operating expenses of the Debtor that are outstanding as of the Closing[1] (the "<u>Assumed Liabilities</u>").  A preliminary list of the Assumed Liabilities is attached as **Schedule "C"**.

1.4.    "As Is" Transaction. Buyer herby acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets, or otherwise relating to any transaction contemplated hereby, including without limitation, any income to be derived or expenses to be incurred in the connection with the Purchased Assets. **Seller hereby disclaims any warranty, express or implied, relating to this transaction, including without limitation, implied warranties or merchantability or fitness for any particular purpose** as to any portion of the Purchased Assets.  Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition of the Purchased Assets.    Accordingly, subject to the representations, warrantied, and covenants

---

[1] The current and upaid regular operating expenses being assumed by the Buyer shall not, and does not, include any past due amounts.

2





10/12/16
11:44AM EDT

expressly set forth in this Agreement, Buyer will accept the Purchased Assets at the Closing **"AS IS": "WHERE IS"; AND WITH ALL FAULTS", IF ANY**.

    1.5. Employee Matters. Buyer may offer employment to the employees of Seller as in existence as of the Closing, at the Buyer's sole discretion.

    2.    Purchase Price. The purchase price for the Purchased Assets (the "Purchase Price") shall be paid as follows:

    2.1. Fifty Thousand and no/100 Dollars ($50,000.00) in cash plus assumption of the Assumed Liabilities, with the cash component being paid at Closing (defined below) less the Deposit (defined below).

    2.2. The Buyer shall be entitled to a credit at Closing in an amount equal to the value of merchandise sold to the Debtor on or after the date of this Agreement for which the Debtor has not paid the Buyer as of the Closing (the "Closing Credit").

    3.    Earnest Money Deposit: Contemporaneous with the delivery by Buyer to Seller of this Agreement, Buyer shall deposit a sum equal to Seventeen Thousand Four Hundred Thirty-four and 20/100 Dollars ($17,434.20) to be held by Seller's counsel in escrow pending Closing ("Deposit"). The Deposit shall be comprised of $10,000.00 in cash and a credit of Seven Thousand Fourt Hundred Thirty Four and 20/10 Dollars ($7,434.20) (the "Deposit Credit"). The Deposit Credit is equal to the value of merchandise sold by the Buyer to the Debtor through the date of this Agreement, and for which the Debtor has not paid the Buyer. The Deposit shall be credited against the Purchase Price.

    4.    Closing. The purchase and sale of the Purchased Assets contemplated by this Agreement (the "Closing") shall take place on the later of: (i) one (1) Business Day after an order confirming the Plan becomes a final and non-appealable, unless the requirement of a final Order is waived by Buyer, or (ii) December 15, 2016. The Closing shall occur at a time and place mutually determined by the parties, and shall be deemed effective as of 12:01 a.m. on the Closing date (the "Effective Date").

    5.    Premises. Seller acknowledges that the effectiveness of this Agreement is expressly conditioned upon Buyer's acquisition of the Premises or the Note. To the extent that Buyer fails to close on sale of the Premises or the Note, then this Agreement shall become null and void, and Seller shall be entitled to retain the Earnest Money Deposit unless such failure to acquire the Premises does not arise from a default by the Buyer (as determined by the Premises Agreement).

    6.    Bankruptcy Case. Buyer acknowledges that the cash component of the Purchase Price is not sufficient to satisfy the secured and priority claims associated with the Bankruptcy Case. Accordingly, the Assumed Liabilities shall be dealt with in the Plan, subject to confirmation pursuant to 11 U.S.C. § 1129 *et seq.* and other applicable sections of the Bankruptcy Code.

3

 

10/12/16
11:44AM EDT

6.1.    Sale Approval Order.  The transactions contemplated herein are subject to, and contingent upon, the entry of a final, non-appealable Order of the Court (subject to the exceptions set forth in the subsections of this Section 6, below as well as the entry of a final non-appealable order (unless the requirement of a final order is waived by the Buyer) confirming the Plan that conforms, in relevant part, to the material terms of this Agreement, that pays allowed administrative expenses, and that is acceptable to Buyer.

6.2.    Upon execution by all parties of this Agreement and deposit of the Deposit as set forth in Section 4 above, Seller shall file a motion with the Court for an order approving this Agreement (the "Sale Motion") and approving bidding procedures within three (3) business days.

6.3.    The Sale Motion shall be in a form reasonably acceptable to Buyer, and shall seek entry of an order (the "Sale Approval Order"): (i) conveying the Purchased Assets free and clear to Buyer, excluding those claims specifically assumed herein, pursuant to, inter alia, 11 U.S.C. §§ 105, 363, and 365; (ii) assigning the Assumed Contracts to Buyer; (iii) determining that Buyer has provided adequate assurance of future performance of the Assigned Contracts within the meaning of 11 U.S.C. § 365(f)(2) and the Assigned Contracts will be assigned to and remain in full force and effect for the benefit of Buyer; (iv) provide that the Court retains jurisdiction to enforce the provisions of this Agreement in all respects; (v) provide that the provisions of the Sale Approval Order are non-severable and mutually dependent; (vi) provide that the transactions contemplated by this Agreement are undertaken by Buyer in good faith, as that term is used in 11 U.S.C. § Section 363(m), and Buyer is entitled to the rights and protection granted thereby; (vii) provide that all of the requirements of 11 U.S.C. § Sections 363 have been met; and (viii) provide that the order is not stayed under the Bankruptcy Rules.

6.4.    Further, the Sale Approval Order shall not impose any obligations on Buyer or Seller not contemplated in this Agreement.  Finally, the Sale Approval Order shall provide a waiver of the 14 day stay period provided by Bankruptcy Rules 6004(h) and 6006(d).

6.5.    The Sale Motion and the Sale Approval Order shall go out on notice to all of the Seller's creditors, parties in interest, and other parties, who the Seller, in its business judgment, believes may be potential bidders, including, without limitation, Seller's current competitors.

6.6.    To induce the Buyer to enter into this Agreement, Seller and Buyer agree as follows:

4



6.6.1.  Break-Up Fee:  In the event that Buyer is not determined to be the highest and best bidder for the Purchased Assets and to compensate Buyer for its out of pocket due-diligence expenses, Buyer shall be entitled to receive payment in the amount of the greater of: (a) its actual costs and expenses associated with this Agreement; or (b) or $5,000.00.

6.6.2.  The Seller will propose to the Court, for its approval, that the terms and conditions of sale to govern the proceeding at the Sale hearing will provide that in order to be considered by the Court, any competing offer must satisfy the following terms and conditions: (i) the purchase price must be at least $67,500.00 cash plus the assumption of the Assumed Liabilities (or the value thereof); and any subsequent bid(s) shall be in increments of no less than $5,000.00 more than the previous bid; (ii) a bidder shall be required to submit to Seller a copy of this Agreement marked up to show changes (the "Marked Up Agreement") along with an earnest money deposit of $20,000.00; (iii) to the extent that bidder requires ownership of the Premises as a condition to this transaction, bidder must provide evidence of its ability to consummate a closing on the purchase of the Premises, in a form reasonably satisfactory to Fairview Investment, LLC (mortgagee of the Premises); and provide evidence in a form reasonably acceptable to Seller of the Buyer's ability to timely consummate the transaction subject of this Agreement;

6.6.3.  An alternative bidder will not be considered by Seller as qualified to participate in the potential auction process contemplated by the Bid Procedures (the "Auction") unless the bid provided by the alternative bidder includes the payment to Seller of the Purchase Price (which amount may be adjusted to correspond to Assumed Liabilities as proposed by the alternative bidder), and includes payment of cash and Assumed Liabilities, and the Seller's determination of the highest and best offer shall be made on the basis of the present day value of the most aggregate consideration provided to the Seller's bankruptcy estate.  A bid by an alternative bidder will not be considered by Seller as qualified for the Auction if (i) such bid is not received by Seller in writing on or before the third business day prior to the Auction, (ii) and such bid does not conform to the requirements to be a qualified bidder set forth in Paragraph 6.6.2 above.  Each bid that is received on or before that third business day prior to the Auction and otherwise conforms to the requirements of Paragraph 6.6.2 above shall be deemed a "Qualifying Bid".

6.6.4.  If one or more Qualifying Bids are submitted in accordance with the Bid Procedures set forth herein, Seller will conduct the Auction two Business Days prior to the date set for the hearing on entry of the Sale Approval Order (the "Sale Hearing").  At the Auction, Seller shall have the right to select the highest and best bid from Buyer and any alternative bidder who submitted a Qualifying Bid (the "Highest and Best Bid"),

5

 

subject to the resolution of any dispute by the Bankruptcy Court;

6.6.5. At the Auction, Buyer shall have the right to submit further bids, and shall be entitled to credit bid its Break-Up Fee as provided for herein as approved by the Bankruptcy Court; and

6.6.6. Only parties who submitted Qualifying Bids and others authorized by Order of the Court will be permitted to bid at the Auction.

6.6.7. In the event that Seller shall receive a Qualifying Bid, it shall afford Buyer an opportunity to participate in an Auction to be held in accordance with the terms of any order approving Bid Procedures at the offices of bankruptcy counsel, 501 Brickell Key Drive, Suite 300, Miami, FL 33131. At any Auction so held, bidding shall proceed in accordance with the Bidding Procedures Order.

6.6.8. The Bankruptcy Court shall hold a sale hearing to confirm the highest and best offer and to authorize the sale of the Purchased Assets to the party submitting the Highest and Best Bid.

6.7. Disclosure: Seller shall be free to file this Agreement with be Bankruptcy Court in connection with its filing its motion to approve Bid Procedures and/or to receive approval of Seller's execution of this Agreement.

7. Seller's Representations and Warranties. Seller represents and warrants to Buyer as follows:

7.1. Organization and Standing. Seller is a corporation validly existing and in good standing under the laws of the State of Florida. Seller is sole owner of the Purchased Assets and is authorized to dispose of the Purchased Assets in the manner contemplated in this Agreement, subject to Court approval.

7.2. Authority; Binding Agreement. Subject to Court approval, Seller has all the requisite power and authority to enter into, execute and deliver this Agreement and the documents contemplated hereby, and to perform and comply with all of the terms, covenants and conditions to be performed and complied with by Seller hereunder and thereunder, and to consummate the transaction contemplated hereby and thereby.

7.3. Conduct of Business in Ordinary Course. To Seller's knowledge, as of the date of this Agreement, (i) Seller has conducted its business in the ordinary course of business in a manner generally consistent with past practices, subject to cash flow limitations.

7.4. Broker's or Finder's Fee. No agent, broker or other person or firm acting on behalf of Seller under its authority is or will be entitled to any broker's or finder's fee or any other commission or similar fee, directly or indirectly, in connection with the transactions contemplated by this Agreement for which Buyer could be held liable.

6



8.    Buyer's Representations and Warranties.  Buyer represents and warrants to Seller as follows:

8.1.    Organization and Standing.  Buyer is a corporation validly existing and in good standing under the laws of the State of Florida.  Buyer has all the requisite corporate power and authority to enter into, execute and deliver this Agreement and the documents contemplated hereby, and to perform and comply with all of the terms, covenants and conditions to be performed and complied with by Buyer hereunder and thereunder, and to consummate the transaction contemplated hereby and thereby.

8.2.    Authorization.    The execution, delivery and performance of this Agreement and of the other agreements and instruments called for hereunder and the consummation of the transactions contemplated by this Agreement and such other agreements and instruments called for hereunder, have been duly and validly authorized by Buyer.  This Agreement constitutes the valid and binding agreement and obligation of Buyer, enforceable in accordance with its respective terms, except as the enforceability hereof may be affected by the Court.  Buyer's execution, delivery and performance of this Agreement do not (i) conflict with or result in a breach of any of the terms, conditions or provisions of the organizational documents of Buyer or any judgment, order, injunction, decree, regulation or ruling of any court or other governmental authority to which Buyer is subject or of any material agreement or contract to which Buyer is a party or is subject, or constitute a default thereunder or (ii) require the consent, authorization or approval of any governmental agency, body, official or authority.

8.3.    Broker's or Finder's Fee.  No agent, broker, investment banker, or other person or firm acting on behalf of Buyer or under its authority is or will be entitled to any broker's or finder's fee or any other commission or similar fee, directly or indirectly, in connection with the transactions contemplated by this Agreement for which Seller could be held liable.

9.    Seller's Conditions Precedent.  Seller's obligation to sell the Purchased Assets and to take the other actions required to be taken by Seller at the Closing is subject to the Court's approval and satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by Seller, in whole or in part):

9.1.    Representations and Warranties True.  The representations and warranties of Buyer shall be true and correct as of the date of this Agreement and on and as of the Closing Date.

9.2.    Buyer Performance.  Buyer shall have performed and complied with all agreements, obligations and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date and Buyer shall deliver a certificate to Seller to such effect.

9.3.    Purchase Price.  Buyer shall have delivered the full cash component of the Purchase Price at Closing.

 

9.4.   Further Documents.   Buyer shall execute and deliver such further documents as Seller may reasonably request.

10.   Buyer's Conditions Precedent.   Buyer's obligation to purchase the Purchased Assets and to take the other actions required to be taken by Buyer at the Closing is subject to satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by Buyer, in whole or in part):

10.1.   Representations and Warranties True.   The representations and warranties of Seller shall be true and correct as of the date of this Agreement and on and as of the Closing Date.

10.2.   Seller's Performance.   All agreements, obligations, covenants and conditions required by this Agreement to be performed or complied with by Seller prior to or on the Closing Date hereunder shall have been so performed.

10.3.   Sale Approval Order.   Seller shall have obtained and delivered to Buyer a final non-appealable Order of the Court authorizing the sale and conveyance of the Purchased Assets under this Agreement.

10.4.   Confirmation Order.   Seller shall have obtained and delivered to Buyer a final non-appealable Order of the Court confirming the Plan, which Plan shall be acceptable to Buyer.

10.5.   Premises Agreement.   Buyer shall have obtained a fully-executed contract to purchase the Premises and/or the Note.

10.6.   Transfer of Purchased Assets.   Seller shall execute and deliver all bills of sale, assignments and other appropriate documents and instruments, reasonably requested by Buyer and in a form reasonably acceptable to Seller, necessary to transfer, convey and assign the Purchased Assets to Buyer free and clear of all Liens.

10.7.   Further Documents.   Seller shall execute and deliver such further documents as Buyer may reasonably request.

11.   Termination.

11.1.   Termination Events.   By notice given prior to the Closing, subject to Section 11.2, this Agreement may be terminated as follows:

11.1.1.   by Buyer if a material breach of any provision of this Agreement has been committed by Seller and such breach has not been waived by Buyer;

11.1.2.   by Seller if a material breach of any provision of this Agreement has been committed by Buyer and such breach has not been waived by Seller;

11.1.3.   by Buyer if any condition in Section 10 has not been satisfied as of the date specified for Closing or if satisfaction of such a condition by such

8


10/12/16
11:44AM EDT

date is or becomes impossible (other than through the failure of Buyer to comply with its obligations under this Agreement), and Buyer has not waived such condition on or before such date;

11.1.4. by Seller if any condition in Section 9 has not been satisfied as of the date specified for Closing or if satisfaction of such a condition by such date is or becomes impossible (other than through the failure of Seller to comply with their obligations under this Agreement), and Seller has not waived such condition on or before such date;

11.1.5. by mutual written consent of Buyer and Seller;

11.1.6. If the Court does not approve the Sale;

11.1.7. If the Court does not confirm a Chapter 11 Plan proposed by Seller that is in substantial conformity with the material terms of this Agreement and is otherwise acceptable to Buyer; or

11.1.8. The Buyer, despite its best efforts, is unable to obtain a fully-executed Premises Agreement.

11.2. Effect of Termination. Each party's right of termination under Section 11.1.1 is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of such right of termination will not be an election of remedies. If this Agreement is terminated pursuant to Section 11.1, all obligations of the parties under this Agreement will terminate, except that the obligations of the parties in this Section 11.2 will survive, provided, however, that, if this Agreement is terminated because of a breach of this Agreement by the nonterminating party or because one or more of the conditions to the terminating party's obligations under this Agreement is not satisfied as a result of the party's failure to comply with its obligations under this Agreement, the terminating party's right to pursue all legal remedies will survive such termination unimpaired.

11.3. Buyer's Failure to Close. Subject to the provisions of this Section 11.1, if the Buyer terminates this Agreement for any reason other than those enumerated in Section 11.1 above, Seller shall be entitled to retain the Earnest Money Deposit as liquidated damages for breach of this Agreement.

11.4. Allowance of Administrative Claim. If this Agreement is terminated or the sale contemplated by this Agreement to the Buyer does not otherwise close, the Buyer shall be entitled to (a) a return of the Deposit, and (b) an allowed administrative claim pursuant to 11 U.S.C. § 503 equal in amount to the Closing and Deposit Credits defined above.

12. Indemnification.

12.1. Indemnification by Buyer. Buyer shall indemnify Seller and Seller's affiliates, officers, directors, shareholders, subsidiaries, members, managers, employees, agents and representatives for, and hold them harmless from and against, any loss, liability, claim, damage, penalty, expense, cost (including costs of investigation and reasonable attorneys' fees

9

 

and costs) or diminution in value, whether or not involving a third-party claim, arising from or in connection with (i) any inaccuracy in or breach of any representation, warranty, covenant or obligation of Buyer in this Agreement or in any certificate or document delivered by Buyer pursuant hereto; (ii) liability for any federal, state or local Taxes of the Seller that existed prior to Closing; and (iii) any liabilities assumed by Buyer pursuant to the provisions of this Agreement.

13.    Miscellaneous.

13.1.    Merger; Waiver. This Agreement supersedes all prior agreements, written and oral, concerning the matters contained herein. This Agreement may not be modified nor may any term hereof be waived orally, but only by an agreement in writing signed by the party or parties against whom any waiver, change, amendment, modification, or discharge may be sought to be enforced. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party hereto, shall be deemed to constitute a waiver by the party taking the action of compliance with any representation, warranty, covenant or agreement contained herein or in any document delivered pursuant hereto. The waiver by any party hereto of any condition or of a breach of another provision of this Agreement shall not operate or be construed as a waiver of any other condition or subsequent breach. The waiver by any party of any of the conditions precedent to its obligation under this Agreement shall not preclude it from seeking redress for breach of this Agreement other than with respect to the condition so waived.

13.2.    Successors. This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of each of the parties. No party may assign this Agreement without the prior written consent of the other party. This Agreement constitutes an agreement solely among the parties hereto, and is not intended to and will not confer any right, remedies, obligation, or liabilities, legal or equitable, including any right of employment on any person (including but not limited to any employee or former employee of Seller) other than the parties hereto and their respective successors or assigns, or otherwise constitute any person a third party beneficiary under or by reason of this Agreement. Nothing in this Agreement, expressed or implied, is intended to or shall constitute the parties hereto partners or participants in a joint venture.

13.3.    Access to Records. Seller may retain copies of, or in lieu thereof, at Seller's sole discretion, have access for one (1) year from the date hereof (and in the case, but only in the case of an audit by a taxing authority, for three (3) years from the end of Seller's current tax year) to, the books of account, financial records and payroll records relating to the period of Seller's ownership of the Purchased Assets.

13.4.    Governing Law; Jurisdiction. The parties specifically agree that this Agreement shall in all respects be interpreted, read construed and governed by the internal laws of the State of Florida, exclusive of its conflicts of law rules. Any party hereto shall be entitled to bring an action to enforce any provision of, or based on any right arising out of, relating to or in connection with, this Agreement, in law or at equity for specific performance, or for any other remedy or damages before the Court. Each party hereto expressly agrees to waive any challenge to either jurisdiction or venue in the aforementioned court. The prevailing party in any such action shall be entitled to recover all attorney's fees and costs of pursuing or defending an action under this Agreement.

10




13.5.   Further Actions.  Buyer and Seller shall execute such other documents and take such other actions as may be reasonably necessary to the performance of this Agreement and the consummation of the transactions contemplated hereby.

13.6.   Counterparts.  This Agreement may be executed in multiple counterparts, including facsimile counterparts, that when taken together shall constitute a single instrument.

13.7.   Rules of Construction.   The captions in this Agreement are for convenience only and shall not affect the construction or interpretation of any term or provision hereof.  Unless otherwise specified herein, all accounting terms used herein shall be interpreted and all accounting determinations hereunder shall be made in accordance with generally accepted accounting principles in the United States consistently applied.  This Agreement was negotiated by the parties with the benefit of legal representation, and any rule of construction or interpretation otherwise requiring this Agreement to be construed or interpreted against any party shall not apply to any construction or interpretation hereof.  In this Agreement, unless a clear contrary intention appears: (i) the singular number includes the plural number and vice versa; (ii) reference to any gender includes each other gender; (iii) reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof; (iv) "hereunder," "hereof," "hereto," and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Section or other provision hereof; (v) "including" (and with correlative meaning "include") means including without limiting the generality of any description preceding such term; (vi) "or" is used in the inclusive sense of "and/or"; (vii) with respect to the determination of any period of time, "from" means "from and including" and "to" means "to but excluding"; and (viii) references to documents, instruments or agreements shall be deemed to refer as well to all addenda, exhibits, schedules or amendments thereto.

13.8.   Severability.  Any provision of this Agreement which is found to be contrary to law or otherwise unenforceable shall not affect the remaining terms of this Agreement, which shall be construed in such event as if the unenforceable provision were absent from this Agreement.

13.9.   Notices.  All notices, requests and other communications between the parties hereto shall be in writing and shall be considered to have been duly given or served when (i) personally delivered, (ii) when received if delivered by confirmed facsimile transmission, air courier or other comparable delivery service, or (iii) on the third day after deposit in the United States mail, certified or registered, return receipt requested, postage prepaid, addressed to the party at the address or facsimile number set forth on the signature page below, or to such other address or facsimile number as such party may hereafter designate by written notice.

*[The remainder of this page is intentionally left blank.  Signatures appear on next page.]*

11



10/12/16
11:44AM EDT

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**BUYER**

*Charles S. Berrane*      dotloop verified
10/12/16 11:44AM EDT
USW4-SV7I-DAC6-EXG4

**Charles S. Berrane**

Address:  c/o Ross R. Hartog, Esq.
Markowitz Ringel Trusty + Hartog
9130 South Dadeland Boulevard, Suite 1800
Miami, Florida 33019
T: 305.670.5000
F: 305.670.5011
E: rhartog@mrthlaw.com

Email:  cberrane@msn.com

**SELLER**

**Ace's Indoor Shooting Range & Pro Gun Shop, Inc.**

By: _____
George De Pina, its President

Address:  P.O. Box 650848
Miami, Florida 33265
Email: depinarealty@gmail.com

Copy to:
Jacqueline Calderin, Esq.
Ehrenstein Charbonneau Calderin
jc@ecclegal.com
501 Brickell Key Drive, Suite 300
Miami, FL  33131
T. 305.722.2002  F. 305.722.2001

12

 

SCHEDULE "A"
Purchased Assets

Substantially all of the Debtor's assets including but not limited to:

1. All contracts and leases included in Schedule B; and

2. All cash, bank accounts, accounts receivable, personal property, inventory
   (including firearms, weapons, and ammunition), telephone numbers, website,
   domain name, logos, trademarks, copyrights, intellelectual property,
   assignable licenses, and goodwill

 

10/12/16
11:44AM EDT

## SCHEDULE B
### Assigned Contracts and Leases

1.  HVAC leases and/or financing agreements to be treated pursuant to a Confirmed Chapter 11 Plan; and

2.  Lease with Geonan Holdings (or successor)





## SCHEDULE C
### Assumed Liabilities

1. Allowed Claim of TotalBank, N.A. to be treated pursuant to a Confirmed Chapter 11 Plan;

2. Allowed Claim of National Funding, Inc. to be treated pursuant to a Confirmed Chapter 11 Plan;

3. Allowed Priority Claim of the Florida Department of Revenue to be treated pursuant to a Confirmed Chapter 11 Plan;

4. Allowed Priority Claim of the Internal Revenue Service to be treated pursuant to a Confirmed Chapter 11 Plan;

5. A sum to be determined in accordance with Seller's Chapter 11 Plan to be earmarked to unsecured creditors of Seller's bankruptcy estate; and

6. Current and unpaid regular monthly operating expenses of the Debtor that are outstanding as of the Closing



10/12/16
11:02AM EDT